# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**

v.

**JOSE CINTRON-ECHAUTEGUI,**

**Defendant.**

**Crim. No. 07-121-14 (ADC)**

## OPINION AND ORDER

On November 14, 2022, the United States Court of Appeals for the First Circuit entered a Judgment in the Appeal, **USCA Case No. 21-1667**, which "concern[ed] the denial of relief under Section 404 of the First Step Act ("FSA")." **ECF No. 3017**. The Court of Appeals vacated and remanded "so that the district court may reconsider the request for sentencing relief under the analytical rubric prescribed by the Supreme Court" in *Concepción v. United States*, 142 S. Ct. 2389 (2022). *Id*. The Court of Appeals found that defendant "consistently has asserted, as one potential basis for Section 404 relief, post-sentencing amendments to U.S.S.G. § 2D1.1(c) regarding the quantity of crack cocaine necessary to trigger specific base offense levels." *Id*. Ultimately, the Court of Appeals saw fit to "leave it to the district court to determine in the first instance the drug quantity or quantities that should be considered when assessing appellant's argument based on the amendments to § 2D1.1(c), and we express no opinion at this time as to whether Section 404 relief ultimately should be granted." *Id*., at 2.

I.      **Substantive and Procedural Background**

   A.      **Straight Guilty Plea and Sentencing**

A Grand Jury indicted defendant and 41 other individuals in a two-count indictment. Count I charged a conspiracy between 2003 and 2007, which objective was to "knowingly and intentionally possess with intent to distribute…, in excess of one (1) kilogram of heroin, …in excess of five (5) kilograms of cocaine…in excess of fifty (50) grams of cocaine base…in excess of one hundred (100) kilograms of marihuana" in violation of 21 U.S.C. §§ 846, 841(a)(1), and 860. **ECF No. 1**. After five days of trial, defendant entered a straight guilty plea for conspiring to possess with intent to distribute at least 50 grams of cocaine base crack cocaine. **ECF No. 1996** at 2, 4, and 6.

At the sentencing hearing, the Court noted that under 21 U.S.C. § 841(b)(1)'s a 10-year mandatory minimum had been triggered by defendant's acceptance of responsibility for the possession with intent to distribute of 50 grams or more of crack cocaine[1]. The Court then walked through § 2D1.1 of the U.S. Sentencing Guidelines ("USSG"). **ECF No. 2003** at 18. Defendant's base offense level under the USSG turned on the amount of crack cocaine at issue. After discussing several means of calculating the drug quantity based on the ample trial evidence, the Court attributed responsibility for at least 4.5 kilograms of crack cocaine to

---

[1] At the change of plea hearing held on February 19, 2008, defendant Cintrón-Echautegui acknowledged that the offense to which pleading guilty carried a penalty of "ten years to life." **ECF No. 1996** at 9.

defendant, the threshold amount at that time. This resulted in a base offense level of 38. *See* U.S.S.G. § 2D1.1(c)(1) (2007); **ECF No. 2003** at 10-13, 20.

Moreover, the Court found "ample evidence of the violence" involved in the drug-trafficking conspiracy, noting that the organization engaged in "frequent fights or battles and shootouts among" competing gangs. **ECF No. 2003** at 14, 22. As a result, it "was clearly foreseeable by all Defendants that … weapons were possessed as part of the conspiracy." *Id.*, at 14. This supported a 2-level increase to the base offense.[2] The Court recognized that the conspiracy operated in a public housing project and in very close proximity to a school (protected location), warranting another 2-level increase. *Id.*, at 20. The Court described the gang's notorious violence as continuously placing the community and innocent bystanders at risk. *Id.*, at 23-24. The Court found sufficient trial evidence demonstrating defendant's knowledge and active participation in the conspiracy and knowledge that his conduct assisted "the organization [in] achieving its goals." *Id*.

The Court also evaluated the section 3553 factors, expressing the need to impose a sentence that would "achieve purposes of deterrence [and] punishment" for this "very serious" conduct, while also "afford[] the Defendant time to rehabilitate and benefit from having

---

[2] The presentence report indicated that the organization had an AK-47 rifle (called the "ill-born"), a mini 14, a .380, and a 45 (caliber) pistols, which would be used to defend themselves. (**ECF No. 2162-1**) at 13 par. 26.

structured guidance." *Id*., at 21-23. The Court subtracted 2-levels given defendant's acceptance of responsibility.[3]

B.  **Defendant's request under FSA**

Defendant filed a pro se Motion for Reduction in Sentence Pursuant to the First Step Act of 2018. **ECF No. 2839**. According to defendant, the only quantity of crack cocaine that could be factored into sentencing is the indictment's allegation of 50 grams because that amount was the one determined by a grand jury. He argued that his sentence required a grand or petit jury to find the drug quantity[4]. Thus, defendant characterized the Court's USSG finding of 4.5 kilograms as an impermissible, judicial factfinding that enhanced the legally prescribed punishment. **ECF No. 2839** at 6-7. As a result, he claimed the First Step Act entitles him to resentencing to a term of no more than the statute's 5-year mandatory minimum and, that upon crediting the time he has already served, defendant demands his immediate release. *Id*.

The Court denied defendant's request for relief under the FSA. **ECF No. 2839**. Defendant appealed. **ECF No. 2916**.

C.  **First Remand**

Because of the recent developments in case law (*i.e., US v. Smith*, 954 F.3d 446 (1st Cir. 2020) and *US v. Concepción*, 991 F.3d 279 (1st Cir. 2021)), the Court of Appeals vacated and

---

[3] The third point was not allocated by the government since defendant's plea was considered "untimely" noting that defendant pled guilty after the fifth day of trial. U.S.S.G. § 3E1.1

[4] It is to be noted, that in the case of all six (6) codefendants that proceeded to trial along with defendant Cintrón, all were convicted in Count I and received sentences ranging between 420 months to life imprisonment.

remanded so that this Court "consider the motion for sentencing relief anew." *See* Judgment at **ECF No. 2952**.

### D. Proceedings on Remand

Following the Court of Appeals' Judgment, the Court entered an Opinion and Order at **ECF No. 2955** after carefully considering the parties' arguments. In the Opinion and Order at **ECF No. 2955,** the Court explained the ratio decidendi behind its findings pursuant to the recent case law and, ultimately, denied defendant's request. *Id*.

### E. Second Appeal and the Supreme Court's decision in *Concepción*

Defendant, nonetheless, appealed, **USCA Case No. 21-1667**; **ECF No. 2966**. In 2022, while defendant's appeal was pending, the Supreme Court issued its decision in *Concepción* (reversing). The Court of Appeals thus directed the parties to submit supplemental briefs in light of the Supreme Court's hot-off-the-press decision in *Concepción*. Although the government sustained *Concepción* did not affect the outcome in this case, the Court of Appeals entered the Judgment discussed at the first paragraph of this Opinion and Order whereby it vacated and remanded the case back to this Court.

## II. Legal Standard

In 2010, Congress enacted the Fair Sentencing Act to raise the threshold quantities of crack cocaine required to trigger harsher mandatory minimum sentences. *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010). However, the Fair Sentencing Act did not apply retroactively, to defendants sentenced prior to August 2010. *See Dorsey v. United States*,

567 U.S. 260, 264 (2012). Thus, Congress enacted the FSA in 2018. *See* First Step Act of 2018, Pub. L. 115-391 (2018). Under that statute:

> A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010… were in effect at the time the covered offense was committed.

*Id.*, at § 404(b).[5] Thereby, the FSA effectively made the Fair Sentencing Act permissibly retroactive by giving courts discretion to resentence defendants convicted of covered offenses and sentenced prior to August 2010.

However, Courts are not mandated to reduce any sentence by the First Step Act – instead, the Act grants courts the discretion to either grant or deny such reductions. *Id.*, at § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to his section.").

**III.   Discussion**

    **A.   Defendant's arguments**

Defendant argued that the only quantity of crack cocaine that could be factored into sentencing were the 50 grams of cocaine base charged in the indictment as the amount determined by a grand jury. He relied on *Alleyne v. U.S.*, 570 U.S. 99, 103 (2013), and *Apprendi v. N.J.*, 530 U.S. 466 (2000), to support the argument that his sentence required a grand or petit jury find the drug quantity. Defendant characterized the Court's USSG finding of 4.5 kilograms as

---

[5] On remand, there is no issue as to the "covered offense" requirement under § 404(a).

an impermissible, judicial factfinding that enhanced the legally prescribed punishment. **ECF No. 2839** at 6-7. *See U.S. v. Ramírez-Negrón*, 751 F.3d 42, 50 (1st Cir. 2014). As a result, he claimed the FSA entitles him to resentencing to a term of no more than the statute's 5-year mandatory minimum and, that upon crediting the time he has already served, defendant demands his immediate release.

First of all, as discussed in this Court's Opinion and Order at **ECF No. 2955**, "the existence vel non of sentencing factors that boost a defendant's sentence but do not trip a new statutory maximum remain grist for the district judge's mill under a preponderance-of-the-evidence standard," including factors such as "drug weight calculations." *U.S. v. Caba*, 241 F.3d 98, 101 (1st Cir. 2001) (collecting cases). Thus, the Court's determination and consideration of the 4.5 kilograms of crack cocaine to determine the guidelines calculations had no effect on the applicable statutory minimum or maximum. Moreover, the Court of Appeals has "flatly reject[ed] the proposition that all drug quantity calculations made under the advisory guidelines must be submitted to a jury." *Ramírez-Negrón*, 751 F.3d at 49.

Second, it is true that 21 U.S.C. § 841(b) identifies mandatory minimum sentences based on drug quantity. However, here, defendant received a 292-month (24.3 year) sentence based on sentencing guidelines calculations. To wit, defendant's acceptance of possession with intent to distribute 50 grams or more of crack cocaine triggered the 10-year mandatory minimum under 21 U.S.C. § 841(b)(1). The Court further noted that the offense of conviction had a base offense level of 38 under U.S.S.G. § 2D1.1(c)(1) (2007), because he was responsible for amounts in excess

of 4.5 kilograms of crack cocaine. **ECF No. 2003** at 10-13, 20. The Court also applied a two-level enhancement for the possession of a weapon in furtherance of a drug offense pursuant to U.S.S.G. § 2D1.2(b)(1), a two-level enhancement under U.S.S.G. § 2D1.2(a)(1) for the offense having taken place at a protected location, and a two-level reduction for defendant's acceptance of responsibility. Therefore, defendant's final adjusted offense level was 40. *Id*., at 20-24. Considering defendant's Criminal History Category of I, the Court determined that defendant had an applicable guideline sentencing range of 292-365 months' imprisonment. The Court imposed a low-end guideline sentence of 292 months.

Therefore, as determined in this Court's Opinion and Order at **ECF No. 2955,** in this case the sentence originally imposed remains squarely within the floor-to-ceiling ranges prescribed under both the pre- and post-Fair Sentencing Act provisions applicable to cases involving the possession of at least 50 grams of crack cocaine.

Defendant also argued that the applicable guideline sentencing range decreased since he was originally sentenced. Pursuant to the current guidelines, a base offense level of 38 requires a finding of 25.2 kilograms or more of cocaine. U.S.S.G. § 2D1.1(c)(1) (2021). In contrast, back when defendant was sentenced, the Court discussed the USSG's then-threshold of 4.5 kilograms of cocaine and how the evidence showed that defendant surpassed that amount by a wide margin. However, it is precisely this issue (drug quantity) that the Court of Appeals expressly ordered this Court to address on remand. Accordingly, the Court will now address this matter.

**B.     Drug quantity and this Court's "consideration" of the arguments and "explanation" of its decision**

According to the Judgment entered by the Court of Appeals, **ECF No. 3017**, defendant "has asserted, as one potential basis for Section 404 relief, post-sentencing amendments to U.S.S.G. § 2D1.1(c) regarding the quantity of crack cocaine necessary to trigger specific base offense levels." *Id*., at 1.  The Court Appeals, however, found that "[i]t is unclear from the current record whether the district court would have understood its authority to consider that potential basis for relief prior to the Supreme Court's decision in *Concepción*. We leave it to the district court to determine in the first instance the drug quantity or quantities that should be considered when assessing appellant's argument based on the amendments to § 2D1.1(c)." *Id*., at 1-2.

The Court of Appeals acknowledged that the

> government suggest[ed] that amendments to U.S.S.G. § 2D1.1(c)… would not alter appellant's guidelines sentencing exposure because the district court concluded at the original sentencing that appellant was responsible for either 109 kilograms of crack (looking to the life of the conspiracy) or 27.3 kilograms of crack (considering only one year), either of which would subject him if sentenced today to a base offense level of 38, the base offense level assigned at the original sentencing.

**ECF No. 3017** at n.1. However, addressing the government's argument, the Court of Appeals explained that "[i]t appears from the sentencing transcript, though, that the district court also entertained a potential quantity of 9.2 kilograms of crack. D.Ct. Dkt. 2003 at 12 (discussing the quantity one would arrive at if one assumed '2.3 kilos in a year . . . [over] a four-year span')." *Id*.

   **(i)     Drug quantity for purposes of § 2D1.1(c)'s argument and sentencing**

The Court will now take a step back and explain what transpired during sentencing in chronological order. Notably, before mentioning the "9.2 kilograms of crack"-scenario,[6] the Court explained at defendant's sentencing "there was ample evidence from testimonies of co-defendants" establishing that they could sell "between 700 and 900" "capsules of crack" in a "night shift" and another "200" during the day shift, each capsule "having .075 of a gram." **ECF No. 2003** at 11. In other words, defendants could sell "between 1,100 and 1,300 capsules" "daily." *Id*. Moreover, the evidence showed that defendants "operated 364 days" a year, which would yield a drug quantity of 82.5 to 97.5 kilograms a year. Amounts that meet the USSG's threshold amount applicable in 2007 (4.5 kilograms, base offense level 38) and the revised version of 2021 (25.2 kilograms, base offense level 38). Therefore, in this Court's opinion, this discussion of the evidence during sentencing (herein, "first scenario") would suffice to deny defendant's argument.[7]

In order to be as detailed as possible during sentencing, the Court then entertained a second scenario based on the US Probation Office's report. This second, more "conservative" scenario factored-in a "low average for what apparently was the sale on a daily basis." **ECF No. 2003** at 11. Nonetheless, even under this "conservative," "below average" scenario defendants would have sold "27.3 kilos of crack cocaine" in a year. *Id*. The Court added, "[i]f we are to

---

[6] Drug quantity that would have arguably opened the door for FSA relief pursuant to U.S.S.G. § 2D1.1(c).
[7] To be clear, these quantities are what the Court determines that should be considered when assessing defendant's arguments based on the amendments to U.S.S.G. § 2D1.1(c)(1).

consider the full-time span either because the defendant participated in it or because the drug distribution was clearly foreseeable from the actions of co-defendants, we are talking about 109 kilos of crack cocaine in the conspiracy span." *Id*., at 12. Thus, even under this second, "conservative" scenario defendant's argument would fail.

However, the Court did not stop there. It discussed yet another scenario, this time considering only a fraction of the drug quantity established by the evidence.[8] As discussed before, however, this third scenario was concocted by the Court purely for arguments' sake. Indeed, the Court entertained a scenario where defendant was responsible for the sales of only "200 capsules" a day, which is the equivalent of a fraction of what the evidence showed defendants sold on a daily basis ("between 1,100 and 1,300 capsules," **ECF No. 2003** at 11). This scenario also assumed that the drug point operated only "three days a week," as opposed to the 364-days operation that defendants attested to under oath. Thus, this third scenario only considered a fifth of the daily sales and for only half of the operation each year. It was under these conditions (which account only for a small fraction of what the evidence established) that the Court calculated that defendant could have been considered responsible for 9.4 kilograms of crack cocaine throughout the conspiracy. Evidently, this was not and is not this Court's determination as to the quantity of drugs for which defendant was responsible for and, thus, applicable to the analysis under U.S.S.G. § 2D1.1(c)(1) (2021).

---

[8] In hindsight, perhaps the Court was too exhaustive in its discussions and would have been better off simply "explain[ing] [its] decisions and demonstrat[ing] that [it] considered the parties' arguments," without more. *Concepción*, at 2404.

### (ii) Alternative grounds

According to the transcript of the sentencing hearing, the Court's reference the "9.2 kilograms of crack"-scenario was the third alternative ground discussed by the Court during sentencing and it was a scenario described by the Court solely for the sake of argument and to illustrate the possible sentences supported by the trial evidence. *See* **ECF No. 2003** at 12. Even if it was considered as a scenario supported by the evidence (it is not), this Court is of the opinion that the other drug quantities discussed by the Court at sentencing (supported by the evidence and co-defendant's testimony) should suffice to uphold its denial of defendant's request for relief under FSA. That is, defendant was sentenced under the most favorable scenario, from those supported by the evidence.

When ruling over a motion for relief under FSA, "a district court is not required to be persuaded by every argument parties make, and it may, in its discretion, dismiss arguments that it does not find compelling without a detailed explanation." *Concepción*, at 2404 (citing *Rita v. United States*, 551 U.S. 338, 356 (2007)). In other words, the sentencing court does not need to "articulate anything more than a brief statement of reasons[,]" much less must it "rebut each argument made by the" defendant. *Id.*, at 2404 (quoting *United States v. Maxwell*, 991 F.3d 685, 694 (6th Cir. 2021)(internal quotation marks omitted). Instead, the courts' obligation is to "explain their decisions and demonstrate that they considered the parties' arguments." *Concepción*, at 2404. Thus, in this Court's view, if it only needs to "explain [its] decisions and demonstrate that [it] considered" defendant's arguments, then an alternate ground discussed *in arguendo* do not

entitle defendant to relief when other reasons explained by the Court would otherwise suffice to support this Court's Opinion and Order denying such relief.

**IV.   Conclusion**

Therefore, unpersuaded but having considered the parties' arguments and after providing the above explanation, the Court denies defendant's request for relief under FSA.

**SO ORDERED**.

In San Juan, Puerto Rico, on this 12th day of May, 2023.

                                          **S/AIDA M. DELGADO-COLÓN**
                                          **United States District Judge**